People v J.M.W. (2024 NY Slip Op 51249(U))

[*1]

People v J.M.W.

2024 NY Slip Op 51249(U)

Decided on September 11, 2024

Supreme Court, Kings County

Quiñones, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 11, 2024
Supreme Court, Kings County

People of the State of New York

against
J.M.W., Defendant.

Index No. XXXXX

For the defendant:
The Legal Aid Society 
By: Nicholas Wiltsie, Esq.
For the People:
Kings County District Attorney's Office
By: Gabrielle Tielman-Fenelus, Esq., Assistant District Attorney

Joanne D. Quiñones, J.

The defendant is charged in the instant indictment with Criminal Possession of a Controlled Substance in the Third Degree and other related offenses in connection with an incident alleged to have occurred on October 29, 2023. By motion served and filed on July 30, 2024, the defendant moves to challenge the People's certificate of compliance (COC) pursuant to Criminal Procedure Law (CPL) section 245.50(1) and to dismiss the indictment pursuant to CPL section 30.30(1)(a).[FN1]
The People served and filed opposition on August 20, 2024.[FN2]
The defense served and filed reply papers on August 27, 2024.[FN3]

The People served and filed a COC together with a statement of readiness (SOR) on June 17, 2024. On July 15, 2024, in an email sent to the assigned prosecutor, defense counsel notified the People of missing discovery (see Defense Exhibit A; Defense Aff ¶ 4). The assistant district attorney responded to defense counsel that same day, to which the defense replied on July 19, 2024 (see Defense Exhibit A). The defense contends that as of the filing of this motion, it has yet to receive the items enumerated in its July 15 email (see Defense Aff ¶ 4). The defendant now challenges the People's COC on the ground that the People failed to disclose: (1) New York City Police Department (NYPD) arraignment card; (2) body worn camera (BWC) audit trails; (3) [*2]NYPD pre-arraignment notification report; (4) NYPD command log; (5) NYPD roll call log; (6) NYPD online prisoner arraignment database (ZOLPA); (7) NYPD prisoner holding pen roster; (8) NYPD consent to search form; and (9) arrest report supplement (see Defense Memo ¶ 21). 
On August 20, 2024, the People produced the command log, online prisoner arraignment database card, prisoner holding pen roster, and roll call log, then filed a supplemental COC. In opposition, the People contend that the items in question are not automatically discoverable (People's Memo at 7-8). Nonetheless, the People assert that they "looked into the above items . . . [and] [o]nce those items were received, the People did disclose said items to defense even though it is still the People's position that said items are not automatically discoverable" (People's Memo at 8). The People therefore submit that they filed their COC in good faith and after exercising due diligence, "and the fact that the People failed to obtain and disclose a few items of discoverable material should not vitiate the People's due diligent, good faith efforts" (People's Memo at 7).
DISCUSSION
Certificate of Compliance
CPL section 245.20(1) requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case," that are within or under the People's "possession, custody, or control, including but not limited to," the items listed in CPL section 245.20(1)(a)-(u). The People are required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable" (CPL § 245.20[2]). "[A]ll items and information related to the prosecution of a charge in the possession of any New York state or local police, or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL § 245.20[2]). CPL section 245.55 directs the People to maintain a "flow of information" with law enforcement personnel to ensure that the People obtain "all material and information pertinent to the defendant and the offense or offenses charged." 
Once the People have complied with the mandates of CPL section 245.20, the People are required to serve and file a COC (CPL § 245.50). The COC shall identify the items provided, and state that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL § 245.50[1]). 
The filing of a "proper" certificate of compliance is a prerequisite to the People being deemed ready for trial (CPL § 245.50[3]; see People v Berkowitz, 68 Misc 3d 1222[A] [Crim Ct, Kings County 2020]; People v Lobato, 66 Misc 3d 1230[A], *4 [Crim Ct, Kings County 2020]). Thus, a statement of readiness (SOR) "must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of" CPL section 245.20 (CPL § 30.30[5]). 
Where the defense is aware of a potential defect or deficiency related to a COC, counsel must "notify or alert the opposing party as soon as practicable" of the defect (CPL § 245.50[4][b]). The statute further requires that a motion challenging a COC be made "as soon as practicable" (CPL § 245.50[4][c]).
The People have a continuing duty to disclose and must file a supplemental COC when additional material is provided after a COC is filed (see CPL §§ 245.50[1], 245.60; People v Bay, 41 NY3d 200, 209 [2023]). A supplemental COC must "detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety [*3]of the certificate of compliance" (CPL § 245.50[1-a]; see Bay, 41 NY3d at 210).
Although belated disclosures alone do not necessarily invalidate a COC, the COC must be made in good faith, and after the exercise of due diligence to obtain discovery materials in the first instance (CPL § 245.50[1]; see Bay, 41 NY3d at 213-214; People v Gonzalez, 68 Misc 3d 1213[A] [Sup Ct, Kings County 2020]; People v Erby, 68 Misc 3d 625 [Sup Ct, Bronx County 2020]; People v Lanfair, 78 Misc 3d 371, 373 [Crim Ct, Albany County 2023]). CPL article 245 "does not require or anticipate a 'perfect prosecutor' " (Bay, 41 NY3d at 212). However, "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (id. at 213 [emphasis added]). Due diligence is determined by, among other relevant factors,
the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery
(id. at 212). "[P]ost-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed" (id. [emphasis added]). 
Under this framework, the court now addresses the items of discovery at issue.
Body Worn Camera (BWC) Audit Trails
The defense submits that the People's COC is invalid for failure to disclose BWC audit trails, among other items. The People counter that it is the Kings County District Attorney's (KCDA) practice to provide "metadata sheets—with all relevant information that can be parsed from the BWC metadata, including, but not limited to, any user notes, categorizations, tags, and markers" (People's Memo at 12). They further contend that "the remaining data contains no factual assertions underlying the charged crimes, is not related to the subject matter of the case, and therefore is not subject to initial/automatic discovery under CPL § 245.20(1)" (id. at 11-12). 
Here, the People acknowledge that there are three types of BWC audit trails: (1) evidence audit trails, which consist of metadata and other information that relates specifically to the relevant BWC footage such as recording start time, upload time, notes and categorizations for a particular video, and the NYPD member who uploaded the video and any personnel who added notes or categorizations; (2) device audit trails, which capture data concerning a specific device, such as any malfunctions, memory storage, battery life, when the camera is turned on and off, and when it is connected to a charger; and (3) user audit trails, which documents the history of the activity of an individual NYPD member who used the BWC (see People's Memo at 12-16). 
In People v Ballard, following an evidentiary hearing, the court concluded that BWC audit trails are automatically discoverable under multiple subsections of CPL section 245.20(1) (82 Misc 3d 403, 411-416 [Crim Ct, Queens County 2023]). This court previously adopted the Ballard rationale and found that audit trails are automatically discoverable as electronically stored information obtained by or on behalf of law enforcement (CPL § 245.20[1][u][i][B]), as evidence that may impeach a testifying prosecution witness (CPL § 245.20[1][k][iv]), and are also discoverable when the audit trails include written statements by law enforcement (CPL § 245.20[1][e]) (see People v Hall, Sup Ct, Kings County, May 21, 2024, Quinones, J., Indictment No. 75024-23). In so holding, this court acknowledged the evolving jurisprudence regarding audit trails post-Ballard where courts have similarly held that audit trails are automatically discoverable (see People v Gourdine, 83 Misc 3d 1264[A] [Sup Ct, Kings County 2024] [audit [*4]trails fall under three categories of discoverable materials]; People v Budhu, 83 Misc 3d 1273[A] [Crim Ct, Queens County 2024] [audit trails are automatically discoverable]; People v Duran, 2024 NY Slip Op 24120 [Crim Ct, Bronx County 2024], quoting People v Rollerson, 82 Misc 3d 1212[A] [Crim Ct, Bronx County 2024] ["although the words 'audit trail' do not appear in the statute, a device audit trail is nonetheless a police report subject to mandatory disclosure"]; People v Cumbe, 82 Misc 3d 1242[A], *6 [Crim Ct, Kings County 2024] ["audit trail logs contain information that is distinct from metadata and body-worn camera footage" and therefore automatically discoverable]; People v Torres, 78 Misc 3d 1206[A], *5 [Crim Ct, Queens County 2023] ["audit trails fall plainly within the ambit of automatic discovery"]). 
Notwithstanding, the People argue that any reliance on Ballard is misplaced (see People's Memo at 16-21). The People contend that CPL section 245.20(1)(u) is inapplicable because "audit trails cannot be said to be information 'seized or obtained by or on behalf of law enforcement' " (People's Memo at 19). Prior to filing a COC, the prosecution is required to disclose to the defense "[a] copy of all electronically created or stored information seized or obtained by or on behalf of law enforcement from . . . a source other than the defendant which relates to the subject matter of the case" (CPL 245.20[1][u][i][B]). The People erroneously submit that "this provision contemplates electronic data stored on devices that are seized by law enforcement pursuant to, say, a search warrant;" however, they provide no statutory or legislative authority to support such a conclusion. As the defense submits, "the NYPD contracts with Axon to use Evidence.com as a video evidence management system. Evidence.com . . . is designed to store and track videos in a forensically sound manner and to streamline the sharing of evidence between parties in criminal matters" (see Defense Reply at 11). The NYPD's own patrol guide also makes clear that audit trails amount to electronically stored information obtained by law enforcement (see Defense Reply at 12). The NYPD patrol guide explicitly states, "The BWC and related hardware/software, as well as video, audio and data captured by the BWC, irrespective of the content, are at all times the property of the Department . . . The video management system maintains an audit trail for all transactions conducted in the system" (Defense Reply at 12; see NYPD Patrol Guide: Use of Body-Worn Cameras, 
https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/212-123.pdf
[last accessed Sept. 6, 2024]).
Insofar as the People contend that audit trails do not relate to the subject matter of the case, other than the notes and categorizations, the court disagrees. By the People's own admission, the three types of audit trails are more expansive than the metadata sheets previously provided. The audit trails provide a comprehensive, raw account of all activity with respect to a particular BWC footage and the recording device including any changes, modifications, replays, and user-specific activity. The metadata sheets, which the People contend contain all relevant, discoverable material from the audit trails, are insufficient to satisfy the People's disclosure obligations since it is not for the People to decide which information is relevant to the defense's case when the totality of the underlying information relates to the subject matter of this case (see e.g. People v Champion, 81 Misc 3d 292, 296-297 [Crim Ct, NY County 2023] [metadata summary insufficient because it failed to provide the identity of the author of each entry, when each was entered, and if or when statements were modified or removed, and other information contained in audit trails]; see also People v Nigel D., 2024 NY Slip Op 51132[U], *5 [Sup Ct, Kings County 2024] ["The People do not get to decide what is relevant to the Defense"]). 
The People were required to disclose the BWC audit trails and a failure to do so fell short [*5]of their statutory obligations.
Command Log
Next, the defense challenges the People's COC on the basis that they failed to timely disclose a command log. The defense argues that the command log is discoverable because it was "created by a police officer and include[s] substantial handwritten information about [the defendant] and the circumstances of his arrest . . . [such as] his name, pedigree information, location of arrest, arrest time, physical and mental condition, property recovered, [and] whether medical was requested" among other things (Defense Reply at 5). The People assert that "[a]t the request of defense and in an abundance of caution, the People disclosed the NYPD Command Log from the date of the defendant's arrest," but that "the command log was not created by a witness in this case and was created with information that is contained in the arrest paperwork. Therefore, all 'items and information that relate to the subject matter of the case' were made available to the defense when the People filed its Certificate of Compliance" (People's Aff ¶ 15).
The court has reviewed the command log in this case, annexed to the People's papers as People's Exhibit 2. The command log consists of handwritten notes made by the police about the defendant at the time of his arrest. Notably, the command log documents the defendant's physical and mental condition, property recovered, the name of the arresting officer, and other key information that relates to the "offenses charged or any potential defense thereto" (CPL § 245.20[1][e]; see People's Exhibit 2). Accordingly, the court finds that the command log is automatically discoverable pursuant to CPL section 245.20(1)(e). The People's argument that the command log is duplicative of other shared discovery is unavailing. There is no statutory provision authorizing the People to belatedly turn over discovery or withhold relevant, discoverable information merely because a similar statement or summary thereof was disclosed in another document (see generally People v Cartagena, 76 Misc 3d 1214[A] [Crim Ct, Kings County 2022], quoting Ajunwa, 75 Misc 3d 1220[A], *4 ["It is not the People's decision to look at two entirely different [items] and decide that they believe one contains information 'duplicative' of the other and so need not be disclosed"]). 
The People's papers fail to demonstrate any diligent efforts to obtain the command log prior to filing their COC or show that they had a good faith basis to believe the command log was not discoverable. Insofar as the People assert that the command log is cumulative of other shared discovery, the discovery statute explicitly addresses how the prosecution must govern its actions when, in its judgment, good cause exists to withhold disclosure (see CPL 245.20[5]). In such an instance, the prosecution "may move for a protective order pursuant to [CPL section] 245.70 . . . and production of the item shall be stayed pending a ruling by the court" (id.). The People did not apply for a protective order with respect to the command log when they initially disputed their obligation to produce the document, nor did they otherwise obtain a ruling from the court.
Moreover, the command log was in the possession of the NYPD and thus, deemed to be in the People's possession as of October 29, 2023, the date of the defendant's arrest (see CPL § 245.20[2] ["all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution"]). Their failure to produce the command log until August 20, 2024, 296 days after its creation and 64 days after their COC was filed is therefore contrary to their obligation to disclose "all items and information that relate to the subject matter and are in [*6]the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL § 245.20[1]).
Considering the People's considerable delay in producing the command log and their failure to establish that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing their initial COC, the People failed to comport with the statutory obligation as it relates to this document.
Roll Call Log
The defense further submits the People failed to timely disclose a roll call log (Defense Memo at 8). The defense argues that the roll call log is subject to automatic discovery because "[r]oll call logs show what other officers were present in the precinct at the time a defendant was arrested and brought to said precinct . . . [and] [t]his is important information for ascertaining potential witnesses with information related to the subject matter of the case" (Defense Reply at 5). The defense further argues that "[s]ince this specific case included a strip search at the precinct, knowing which officers were present at the time is even more material" (id.). In opposition, the People submit that "[t]he information contained in the roll call log was not created by a witness in this case and again contains information that is already contained in other police paperwork, namely, the activity logs of the police officers that were served on the defense" (People's Aff ¶ 16).
The court has examined the roll call log, annexed as People's Exhibit 3, and finds that the roll call log is not subject to automatic discovery. In so finding, this court has reviewed several decisions from courts of coordinate jurisdiction regarding roll call logs but none of which provide detailed reasoning as to the discoverability of said material (see People v Gourdine, 83 Misc 3d 1264[A] [Sup Ct, Kings County 2024] [People failed to explain why they asserted that roll call logs are not discoverable, therefore the court found that they failed to comply with discovery obligations]; People v Harris, 83 Misc 3d 1250[A] [Sup Ct, Kings County 2024] [People precluded from introducing roll call logs in case-in-chief for failure to turn over said documents along with other NYPD paperwork]; People v Castanos, 82 Misc 3d 1225[A] [Sup Ct, NY County 2024] [where defense alleged that roll call log is missing and the People countered that it is not discoverable, the court declined to rule on the issue since the COC was invalid for failure to disclose other relevant documents]; People v Dieudonne, 83 Misc 3d 1237[A], *4 [Crim Ct, Kings County 2024] [neither party explained discoverability of roll call logs, thus the court ordered disclosure in favor of presumption of openness]; People v Quinlan, 71 Misc 3d 266, 271 [Crim Ct, Bronx County 2021] [COC invalid for failure to timely disclose NYPD paperwork including roll call log]). 
In People v Brown (83 Misc 3d 1230[A] [Crim Ct, Kings County 2024]), the Criminal Court cited to CPL sections 245.20(1)(e) and (d) in finding that the roll call log is subject to automatic discovery. Those sections, respectively, require the prosecution to disclosure the name and work affiliation of all law enforcement personnel whom the prosecutor knows to have relevant evidence or information and to disclose all statements made by persons who have relevant evidence or information. It is reasonable to conclude that all officers working in a particular precinct on a particular date were neither involved in the instant offense nor possess relevant information. The roll call log is essentially a timesheet for a particular precinct and the information contained therein is not case specific. It does not, for example, provide any information regarding what arrests the officers participated in nor provide any information [*7]specific to the defendant or the defendant's arrest. It is also unclear how this particular log constitutes a statement or report contemplated under CPL section 245.20(1)(d). Therefore, contrary to the defense's assertion, the roll call log does not provide information for "ascertaining potential witnesses with information related to the subject matter of the case" and is not subject to automatic discovery.
Prisoner Arraignment Database
The defense also challenges the People's COC on the basis that the People did not timely disclose the Prisoner Arraignment Database. The defense explains that this document is a "police-generated item [that] documents [the defendant]'s location from police custody in the precinct to release after arraignment [and] includes notes about his lack of warrants or outstanding arrests, the names of all officers who had custody of him, how long he was in custody, and much more" (Defense Reply at 6). In reply, the defense annexed the Prisoner Arraignment Database form as Defense Exhibit C. The People contend that the Prisoner Arraignment Database "do[es] not contain any statements that are 'evidence or information relevant to any offense charged or to any potential defense thereto' pursuant to [CPL section] 245.20(1)(e), nor do they provide any additional information related to the subject matter of the case" (People's Aff ¶ 17). The People further assert that "all the information contained in this form has already been turned over in various documents" (id.). 
The court finds that the Prisoner Arraignment Database is subject to automatic discovery. Inasmuch as the Prisoner Arraignment Database documents the names of the officers that participated in the defendant's arrest processing, contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment, this item is automatically discoverable pursuant to CPL sections 245.20(1)(e). The People's argument that the information contained in this form is duplicative of other discovery does not bear on the document's discoverability as discussed above (see Cartagena, 76 Misc 3d 1214[A], *6).
As with the command log, the People do not put forth any diligent efforts to obtain this police-created document prior to filing their COC. By their own admission, the People only disclosed the Prisoner Arraignment Database "at the request of defense and in an abundance of caution" on August 20, 2024, but do not detail any requests or attempts made to obtain this discovery, or their reasons for not doing so, at the time they filed their COC (People's Aff ¶ 17). 
The People have therefore failed to meet their burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing their COC with respect to this material.
Holding Pen Roster
The defense also challenges the People's COC for their failure to timely disclose a holding pen roster. The defense submits that the holding pen roster is automatically discoverable because "the holding pens roster is a list of all prisoners in the precinct, their arresting officers, and includes . . . handwritten notes about said prisoners" (Defense Reply at 6). The People argue that "[t]he defendant is not listed in the document at all. Therefore, this document is not discoverable because there is no information related to the subject matter of the case contained therein" (People's Aff ¶ 18). In reply, the defense argues that "[t]he fact that the Police failed to log [the defendant] onto their holding pen roster, despite him being in their custody for over 20 [*8]hours (during which time they conducted a strip search of his person) raises serious questions about the police work in this case" and does not negate that the document is automatically discoverable (Defense Reply at 6).
Here, the holding pen roster is a handwritten log that lists all the prisoners in the precinct on the day of the defendant's arrest and documents the names of the officers that guarded each prisoner. In some instances, the holding pen roster also notes observations made by these officers about the prisoners such as whether they were "sitting alert" or "asleep." While under ordinary circumstances the holding pen roster may be discoverable, in this case the name of the defendant and any information about the defendant and his arrest does not appear in the document. Consequently, the holding pen roster at issue here does not relate to the subject matter of the case.
Arraignment Card; Pre-Arraignment Notification Report; NYPD Consent to Search Form; Arrest Report Supplement
The defense also contends the People failed to turn over an Arraignment Card, a Pre-Arraignment Notification Report, a Consent to Search Form, and an Arrest Report Supplement (Defense Memo at 8). The People submit that Officer Torres informed them that these documents were not created for this case (People's Aff ¶¶ 12, 14, 19, 20). Despite the People's representations, the court's own file contains an "NYPD Court Verification / Arraignment Card." The People were obligated to disclose this document to the defense prior to filing the COC (see CPL § 245.20[1][e]). With respect to the other documents, the People have no further obligation in this regard absent some indicia that these documents exist.
COC Conclusion
In sum, the court finds that the People have fallen short in complying with their automatic discovery obligations. The court has considered the relevant factors enumerated in Bay and finds that the People failed to show the COC was filed after the exercise of due diligence, reasonable under the circumstances, to disclose "all known material" (see CPL § 245.50[1]). Insofar as the discovery items at issue here are items created by the NYPD, the People were statutorily deemed to have constructive possession of this material and obligated to disclose these documents to the defense prior to filing their COC (see CPL § 245.20[2] ["all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution"]). Critically, the prosecution failed to detail what steps, if any, were taken to ascertain relevant discovery prior to filing the COC and further failed to provide cogent reasons for their discovery lapses. 
Accordingly, for the reasons set forth above, the People's COC served and filed on June 17, 2024, is deemed invalid, and the accompanying SOR illusory. 
Speedy Trial
Where a defendant is charged with a felony, a motion to dismiss must be granted if the People are not ready for trial within six months of the commencement of the criminal action (CPL § 30.30[1][a]). "Whether the People have satisfied this obligation is determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of [*9]the statute and then adding to the result any post-readiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Cortes, 80 NY2d 201, 208 [1992]). The defense has the initial burden of showing through sworn allegations of fact, that there has been an inexcusable delay beyond the time allotted by the statute. Once the defense has made that showing, the People bear the burden of demonstrating sufficient excludable time to withstand a motion to dismiss (see People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]).
"A criminal action is commenced by the filing of an accusatory instrument against a defendant in criminal court" (CPL § 1.20[17]); see also CPL § 100.05; People v Lomax, 50 NY2d 351, 356 [1980]). Here, the People filed a felony complaint in Kings County Criminal Court on October 30, 2023. As such, this case commenced with the filing of the initial accusatory instrument, the felony complaint, on October 30, 2023. Therefore, the People had six months or in this case 183 days, in which to announce their readiness for trial.
Based on a review of the official court file and the submissions of the parties, the court finds as follows:
October 30, 2023 — October 31, 2023 (1 day chargeable)
On October 30, 2023, a felony complaint was filed against the defendant and the defendant was arraigned in Criminal Court. The matter was adjourned to October 31, 2023, in Part STEP. 
The People argue that "it is well understood in Kings County that when a case is sent to STEP, the time that the case is in STEP is excludable" (People's Aff ¶ 3). The People ordinarily have an obligation to "identify the exclusions on which they intend to rely, and the defense must identify any legal or factual impediments to the use of these exclusions" (People v Luperon, 85 NY2d 71, 78 [1995]; see People v Cortes, 80 NY2d 201, 216 [1992] [the prosecution has the burden of establishing their entitlement to have pre-readiness delays excluded from their readiness time]). Here, the case was in a pre-readiness posture, and the People have not identified any exclusion. Therefore, the entirety of this adjournment is chargeable to the People. 
October 31, 2023 — January 16, 2024 (77 days chargeable)
On October 31, 2023, the case was called in Part STEP. The case was adjourned to January 16, 2024, in Part AP1F for grand jury action.
An adjournment for grand jury action is chargeable to the People (see People v Anderson, 252 AD2d 399 [1st Dept 1998]; People v Babcock, 86 AD2d 979 [4th Dept 1982]).
January 16, 2024 — February 14, 2024 (29 days chargeable)
On January 16, 2024, the case was heard in Part AP1F, but there was no grand jury action at that time. 
On January 29, 2024, the People filed the instant indictment, and the case was calendared for Supreme Court arraignment on February 14, 2023.
The period between indictment and Supreme Court arraignment is chargeable to the People (see People v Correa, 77 NY2d 930, 931 [1991] [delays between indictment and arraignment are not excludable under CPL § 30.30]; see also People v Lisene, 201 AD3d 738, 740 [2d Dept 2022] [period between commencement of the action until defendant's arraignment on the indictment chargeable to the People]; People v Brown, 207 AD2d 556, 557 [2d Dept 1994] [period from date felony complaint was filed to date defendant was arraigned on the indictment is chargeable to the People]). 
February 14, 2024 — April 9, 2024 (19 days chargeable)
On February 14, 2024, the defendant was arraigned on the indictment in Supreme Court and defense counsel moved for an inspection of the grand jury minutes. The case was adjourned to April 9, 2024, for discovery and the court's decision on the sufficiency of the grand jury minutes. 
The People provided the court with the grand jury minutes on April 8, 2024, approximately 54 days after defense counsel's request for inspection and one day before the date the court had adjourned for a decision on the sufficiency of the grand jury minutes. 
Generally, the period during which a pre-trial motion, such as a motion to inspect the grand jury minutes, is under consideration by the court is excludable (see CPL § 30.30[4][a]; see also People v Lopez, 49 AD3d 899 [2d Dept 2008] [court properly excluded from the time chargeable to the People the period in which the court was reviewing the grand jury minutes]). Where, however, the People's failure to provide the grand jury minutes results in a delay in the court's ability to dispose of a motion to inspect the grand jury minutes, the delay is chargeable (Brown, 207 AD2d at 557 [prosecution chargeable with 104-days resulting from the delay caused by their inability to submit a certified copy of the grand jury minutes to the court for inspection]).
To be sure, some delay in producing the grand jury minutes for inspection may be tolerated, and therefore excludable (see e.g. People v Harris, 82 NY2d 409, 414 [1993] [affirming 36 days out of 64-day delay as a reasonable period within which People should have produced grand jury minutes]; People v Connell, 185 AD3d 1048, 1050 [2d Dept 2020] [trial court properly excluded 49-period as People were entitled to a reasonable period of time to provide the grand jury minutes to the court], lv denied 36 NY3d 928 [2020], cert denied 141 S Ct 2864 [2021]; People v Edwards, 215 AD2d 498, 499 [2d Dept 1995] [35 day period excludable as a reasonable period to obtain and provide grand jury minutes to the court]).
Here, the People do not offer any reason for their delay in producing the grand jury minutes. They do not assert, for example, that the delay was due to a grand jury reporter shortage, to a grand jury minute backlog, or because the grand jury minutes in this case were particularly voluminous or complex. In the absence of an explanation for their delay in producing the minutes, the court excludes from its calculations 35 days of this adjournment as a "reasonable amount of time" for the People to procure the grand jury minutes (see Edwards, 215 AD2d at 499 [35 days was reasonable period in which to produce grand jury minutes]). The one day from April 8, 2024, when the People finally provided the grand jury minutes to the court, to April 9, 2024, is excludable as a period during which a pre-trial motion was under consideration by the court (see CPL § 30.30[4][a]; see also Lopez, 49 AD3d at 899 [court properly excluded from the time chargeable to the People the period in which the court was reviewing the grand jury minutes]). 
The remaining 19 days of the adjournment are chargeable to the People.
April 9, 2024 — June 11, 2024 (47 days chargeable)
On April 9, 2024, the court was unable to render a decision on the grand jury minutes because of the People's delay in producing the grand jury minutes. The matter was adjourned to June 11, 2024, for the People's COC.
On April 25, 2024, the court issued its decision on the sufficiency of the grand jury minutes off-calendar.
The period between April 9, 2024 and April 25, 2024, is excludable as a time during which a pre-trial motion is under consideration by the court (see CPL § 30.30[4][a]). 
As conceded by the People, the remainder of this pre-readiness adjournment is chargeable.
June 11, 2024 — July 16, 2024 (35 days chargeable)
On June 11, 2024, the People had not yet filed their COC and the matter was adjourned to July 16, 2024, for the People's COC.
On June 17, 2024, the People filed a COC and SOR which the court deems invalid and illusory; thus, it did not toll the speedy trial clock. In the absence of a valid COC and SOR, the entirety of this adjournment is chargeable to the People.
July 16, 2024 — July 31, 2024 (14 days chargeable)
On July 16, 2024, the case was called in Part 9 and the court adjourned the matter to July 31, 2024, for the defense COC.
On July 30, 2024, the defense served and filed the instant motion challenging the People's COC and for dismissal of the indictment.
The period from July 16, 2024 to July 30, 2024 is chargeable as the People had not validly declared their readiness for trial (see People v Bautista-Gonzalez, 224 AD3d 845, 846 [2d Dept 2024] [an adjournment for the defendant's reciprocal discovery obligations under CPL sections 245.10(2) and 245.20(4) is not excludable pursuant to CPL section 30.30(4)(a)]). The remainder of the adjournment is excludable, however, as a period during which a pre-trial motion is under consideration by the court (see CPL § 30.30[4][a]).
July 31, 2024 — September 11, 2024 (0 days chargeable)
On July 31, 2024, the court set a motion schedule and directed the People to file their response to the defense's motion by August 13, 2024, and the defense to file their reply by August 20, 2024. The matter was adjourned to September 11, 2024, for the court's decision.
On August 13, 2024, the assigned ADA emailed the court requesting an extension to submit their response. The court granted the ADA's request and set a new briefing schedule directing the People to file their response by August 20, 2024, and the defense to file their reply by August 27, 2024.
On August 20, 2024, the People served and filed a supplemental COC.
This period is excludable as a time during which a pre-trial motion is under consideration by the court (see CPL § 30.30[4][a]). 

CONCLUSION
In total, the People are charged with 222 days which exceeds the statutory time limit provided by CPL section 30.30(1)(a).
Accordingly, the defendant's motion to dismiss the indictment on speedy trial grounds is granted.
This constitutes the Decision and Order of the court.
Dated: September 11, 2024
Brooklyn, NY
Hon. Joanne D. Quiñones, J.S.C.

Footnotes

Footnote 1:NY St Cts Elec Filing (NYSCEF) Electronic Document Delivery System (EDDS) Doc ID YNUHXQ. 

Footnote 2:NYSCEF EDDS Doc ID EU0JJ0.

Footnote 3:NYSCEF EDDS Doc ID PJTBDX.